# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PERRY SPILLER, *et al.*,

        *Plaintiffs*,

      v.

DISTRICT OF COLUMBIA, *et al.*,

        *Defendants*.

Civil Action No. 16-2059 (RDM)

## MEMORANDOM OPINION AND ORDER

Plaintiffs Perry Spiller and James McCray bring this action against the District of Columbia and two Metropolitan Police Department Officers, who are identified in the complaint as Timothy Murphy and Robert Barillaro. Spiller and McCray allege that they were unlawfully arrested, injured, and detained, and that Spiller was maliciously prosecuted, after police officers observed them laughing at a fight outside a nightclub in Washington, D.C. The two men bring suit under 42 U.S.C. § 1983 and various provisions of the Constitution, and they also assert common law claims for false arrest, false imprisonment, negligent supervision and training, and negligent infliction of emotional distress.

Defendants move to dismiss Plaintiffs' claims in part pursuant to Rule 12(b)(6), or in the alternative, for summary judgment in part under Rule 56. For the reasons explained below, the Court concludes that (1) Plaintiffs fail to state a substantive due process claim; (2) Spiller fails to state a claim for "malicious prosecution" under § 1983[1] but does so under D.C. law; (3)

---

[1] Although Spiller and McCray allege that their constitutional rights were violated by the District of Columbia and the defendant police officers, they group their § 1983 claims by reference to analogous common law torts.

Plaintiffs' § 1983 "negligent infliction of emotional distress" claim is duplicative of their § 1983 "negligent supervision and training" claims; and (4) Plaintiffs fail to state claims for negligent supervision and training, regardless of whether those claims are premised on the common law or § 1983.

The Court will, accordingly, **GRANT** in part and **DENY** in part Defendants' motion to dismiss, or in the alternative, for summary judgment.

## I. BACKGROUND

 In considering Defendants' motion to dismiss, the Court will accept Plaintiffs' factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although Plaintiffs' allegations are not entitled to that same deference for purposes of Defendants' motion for summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986), the facts relevant to the determination of that motion—namely, the content and date of the notices sent to the District—are undisputed.

On May 30, 2015, McCray and Spiller stood outside a nightclub, which was closing for the night. Dkt. 1 at 6 (Compl. ¶ 19). Around midnight, they observed two people begin to fight in a "loud and violent" manner. *Id.* (Compl. ¶ 19). Barillaro and his partner were in a police car down the block and were soon approached by one of the individuals involved in the fight. *Id.* (Compl. ¶ 19). Spiller and McCray "stood nearby and laughed at the incident taking place." *Id.* (Compl. ¶ 20). The police officers came over to the two men, and "asked [them] to leave the scene where the fight took place." *Id.* (Compl. ¶ 20). The police did not arrest either of the individuals involved in the fight. *Id.* (Comp. ¶ 20). McCray and Spiller relocated to two "chairs in an alleyway adjacent to the street where the incident took place." *Id.* (Compl. ¶ 21). The officers "then re-approached and grabbed the Plaintiffs and said . . . 'You're under arrest for

noise violation!'" *Id.* (Compl. ¶ 21). After a brief conversation in which Spiller insisted that he and McCray had had nothing to do with the earlier fight, Barillaro "tackled . . . Spiller by using his hands and arms to . . . forcefully conduct a takedown of [Spiller]." *Id.* at 7 (Compl. ¶ 22). Spiller "suffered swelling and abrasions to his legs, [a] sore throat, and . . . numbness on the left side of his body" as a result of the "takedown." *Id.* at 7, 8 (Compl. ¶¶ 22, 25). The other officer, "using his arms and hands and full force of his weight," also "tackl[ed] . . . McCray to the ground using an unnecessary and excessive amount of force." *Id.* at 7 (Compl. ¶ 22). While Barillaro's partner "held down" McCray, Barillaro "grabbed . . . McCray's hands and with full force . . . yanked . . . McCray's right hand and slammed [it] on the hard ground causing . . . McCray to suffer a broken hand." *Id.* (Compl. ¶ 23).

Both men required treatment for the injuries they sustained when the officers tackled them. *Id.* at 7–8 (Compl. ¶¶ 24–25). McCray was arrested for "Making Noise at Night," despite having "made no noise." *Id.* at 8 (Compl. ¶ 26). He was "shackled and handcuffed and sent to D.C. Superior Court for processing," but "[a]fter spending several hours in jail for having committed no offense," he was released without being charged. *Id.* (Compl. ¶ 26). Spiller was arrested for "Making Noise at Night" and for "Assault on a Police Officer," although he was not charged with the former. *Id.* (Compl. ¶ 27). He was, however, charged with "Assault on a Police Officer" and "Carrying a Dangerous Weapon" (nunchucks "allegedly recovered from his backpack pursuant to a search incident to arrest"). *Id.* (Compl. ¶ 27). On October 5, 2015, all charges were dismissed by the United States Attorney's Office, and "the assigned prosecuting attorney informed" Spiller's attorney that the office "had opened an internal investigation

against" the two officers involved in the arrest.[2]  *Id.* at 8–9 (Compl. ¶ 27).  Four days later,

Spiller and McCray's counsel sent letters to the Mayor of the District of Columbia asserting their

"intention to file suit against the District of Columbia for [their] unlawful arrest[s] and for the

intentional, unjustifiable, and brutal physical assault of [their] person[s] by Metropolitan Police

Department (MPD) officers."  Dkt. 19 at 29; *id.* at 31.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if "the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*  Although "detailed factual allegations" are

not required, the complaint must contain "more than labels and conclusions, [or] a formulaic

recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  The Court must

"assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must

"grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged,"

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation

marks omitted).  The Court, however, need not accept "a legal conclusion couched as a factual

allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[2]  In Spiller's notice to the District of Columbia of his intent to file suit, he described this
sequence of events slightly differently, stating that "[a] few weeks before the October 5, 2015
trial date, the United States Attorney's Office opened an investigation against all officers
involved in this matter," and that "[o]n October 2, 2015, the United States Attorney's Office
entered a *nolle prosequi* in U.S. v. Perry Spiller."  Dkt. 19 at 31.  The exact chronology of the
dismissal and the investigation is not relevant to the present motion.

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Liberty Lobby*, 477 U.S. at 247–48; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *Holcomb*, 433 F.3d at 895; *Liberty Lobby*, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *See Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

## III. ANALYSIS

Both sides have, at least modestly, narrowed the issues for decision at this early stage of the litigation. As an initial matter, although Plaintiffs initially named Timothy Murphy as one of the two individual defendants, no one by that name works for MPD. Plaintiffs acknowledge as much, and suggest they will seek leave to amend their complaint to name the correct officer in the future. *See* Dkt. 18. For now, the Court will dismiss "Timothy Murphy" from the suit by virtue of Plaintiffs' concession.[3] Plaintiffs also concede that Count I, alleging false arrest, and Count II, alleging false imprisonment, should be merged. Dkt. 19 at 12. For their part, Defendants have not moved to dismiss Count VII, alleging "gross negligent excessive force,"

---

[3] The suit originally named the United States Attorney for the District of Columbia and her office as defendants, but Plaintiffs voluntarily dismissed those claims. Dkt. 16.

and they concede that Count VIII, insofar as it alleges a common law negligent infliction of emotional distress claim, states a claim. Dkt. 13 at 21–22; Dkt. 21 at 5. The remaining claims are discussed below.

## A.    Substantive Due Process

Count III alleges "that the Defendants denied the Plaintiffs substantive due process;" "that the negligent conduct of the officers 'shocks the conscience;'" and that the officers "conducted a reckless investigation" by failing to establish probable cause prior to arresting Spiller and McCray because they "failed to properly investigate the arrest area, scene and location." Dkt. 1 at 12 (Compl. ¶¶ 50–51). Defendants, in response, assert that the officers' alleged actions are not "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 540 (D.C. Cir. 2015) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). While that may be true, the Court need not reach the question, because the actions underlying the due process claim are barred by the threshold application of the "more [] specific provision rule" announced in *Graham v. Connor*, 490 U.S. 386 (1989). *Lewis*, 523 U.S. at 844. That rule holds that when "an explicit textual source of constitutional protection against [the] sort of physically intrusive governmental conduct" at issue exists, that more specific provision, "not the more generalized notion of 'substantive due process,' must be the guide for analyzing th[o]se claims." *Graham*, 490 U.S. at 395. The relevant conduct at issue in this case is MPD's seizure of McCray and Spiller without probable cause. The claim thus "arises in the context of an arrest or investigatory stop of a free citizen," and "is most properly characterized as one invoking the protections of the Fourth Amendment." *Id*. at 394. Because that claim is "'covered by' the Fourth Amendment," "[s]ubstantive due process analysis is therefore inappropriate." *Lewis*, 523

U.S. at 843.  Defendants' motion to dismiss Plaintiffs' substantive due process claim will, therefore, be granted.

**B.**     **Malicious Prosecution**

1.     *Section 1983*

Spiller alleges that he was subject to malicious prosecution from May 30, 2015 to October 5, 2015, and, in particular, that he was "arrested," "beaten," "prosecuted," and "forced to come to Court," even though he did not commit a crime.  Dkt. 1 at 14–15 (Compl. ¶¶ 66–70). Spiller does not expressly invoke § 1983, although he labels the claim a "Fourth Amendment Malicious Prosecution Claim."  Dkt. 1 at 14–15 (Compl. ¶¶ 66–70).  Defendants treat the count as a claim under § 1983 in their motion to dismiss, and argue that such a claim "hinges on the continued *detention* of a plaintiff once his/her criminal prosecution is instituted."  Dkt. 13 at 19 (citing *Wallace v. Kato*, 549 U.S. 384 (2007)).  Because "Spiller makes no allegation that he was held in custody subsequent to the initiation of the criminal prosecution," Defendants argue he has failed to state a claim.  *Id.* at 19–20.  The nub of the current controversy, then, is whether something less than detention in a prison or jail—which, for clarity, the Court refers to as "incarceration"—can support a § 1983 claim for malicious prosecution, and if so, whether Spiller has nevertheless failed to allege a sufficiently severe deprivation of his liberty.

Contrary to Defendants' categorical argument, in the D.C. Circuit, incarceration is not an essential element of a malicious prosecution claim under § 1983.  Instead, "malicious prosecution is actionable under 42 U.S.C. § 1983 to the extent that the defendant's actions cause the plaintiff to be unreasonably *'seized'* without probable cause, in violation of the Fourth Amendment."  *Pitt v. District of Columbia*, 491 F.3d 494, 511 (D.C. Cir. 2007) (emphasis added); *accord Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 993 (D.C. Cir. 2014); *Demery v. Montgomery Cty.*, 602 F. Supp. 2d 206, 212 (D.D.C. 2009) (holding that plaintiff alleging "the

unreasonable seizure of his person" stated a claim for malicious prosecution under § 1983).

Exactly what pretrial restrictions constitute "seizures" for this purpose, however, is less clear.  In the D.C. Circuit's only direct discussion of the issue, it concluded that a ten-day commitment to a halfway house constituted a seizure sufficient to support a claim for malicious prosecution. *Pitt*, 491 F.3d at 511.  Courts within this circuit have also held that short periods of detention directly following an arraignment or "being restricted by pretrial conditions and being compelled to appear in court" can constitute a seizure sufficient to state a § 1983 malicious prosecution claim.  *See, e.g.*, *Mehari v. District of Columbia*, 268 F. Supp. 3d 73, 82 (D.D.C. 2017); *Thorp v. District of Columbia*, 142 F. Supp. 3d 132, 145–46 (D.D.C. 2015) (suggesting that "drug testing and weekly interviews with court officials" constitute a seizure in context of § 1983 malicious prosecution claim).

Other circuits have produced a diverse set of standards for discerning whether conditions short of incarceration are sufficient to support a § 1983 malicious prosecution claim.  The Second Circuit has held that restrictions on travel and the requirement that a defendant make "periodic court appearances" constitute sufficient limitations on liberty for purposes of a § 1983 malicious prosecution claim.  *See Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997).  The Third Circuit has found similar terms of pretrial release sufficient to state a § 1983 malicious prosecution claim, and it has expressly recognized that, under its capacious definition of seizure, "nearly all individuals alleging malicious prosecution in cases against public officials will be able to sue under section 1983 because travel restrictions and required attendance at court hearings inhere in many prosecutions."  *See Gallo v. City of Philadelphia*, 161 F.3d 217, 225 (3d Cir. 1998); *see also id.* at 222 (holding that it "amounted to a seizure" when a defendant "was prohibited from traveling outside New Jersey and Pennsylvania" in addition to having to "post a

8

$10,000 bond," "attend all court hearings including his trial and arraignment," and "contact Pretrial Services on a weekly basis").  And the Fifth Circuit has held that a "summons to appear in court, coupled with the requirements that [the plaintiff] obtain permission before leaving the state, report regularly to pretrial services, sign a personal recognizance bond, and provide federal officers with financial and identifying information, diminished [the plaintiff's] liberty enough to render him seized under the Fourth Amendment." *Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc).

By contrast, the First and Tenth Circuits have held that compelled pretrial appearances and other common release conditions, without more, are not seizures sufficient to support a § 1983 malicious prosecution claim because, "if the concept of a seizure is regarded as elastic enough to encompass standard conditions of pretrial release, virtually every criminal defendant will be deemed to be seized pending the resolution of the charges against him." *Nieves v. McSweeney*, 241 F.3d 46, 55 (1st Cir. 2001); *accord Becker v. Kroll*, 494 F.3d 904, 915–16 (10th Cir. 2007).  Still other circuits have declined to delineate the exact boundaries of what constitutes a pretrial seizure while simultaneously cautioning against an overly broad interpretation that encompasses the standard conditions of pretrial release.  *See, e.g.*, *Kingsland v. City of Miami*, 382 F.3d 1220, 1235–36 (11th Cir. 2004) (holding that being "required to (1) pay a $1,000 bond; (2) appear at [an] arraignment; and (3) make two trips from New Jersey to Florida to defend herself in court, pursuant to the authority of the state" did not "constitute a significant deprivation of [the plaintiff's] liberty" and therefore did not "constitute[] a seizure violative of the Fourth Amendment"); *Karam v. City of Burbank*, 352 F.3d 1188, 1193–94 (9th Cir. 2003) (holding that a person not charged with a felony was not seized when only restrictions on liberty

were required court appearances and obtaining permission to leave the state); *Johnson v. City of Cincinnati*, 310 F.3d 484, 492–93 (6th Cir. 2002) (holding that the imposition of travel restrictions, without "additional restrictions designed to compel an ultimate court appearance, such as obligations to post bond, attend court hearings, and contact pretrial services" did not constitute a seizure).

This diversity of outcomes flows from the absence of controlling Supreme Court precedent on the issue. As the Second Circuit noted in *Murphy v. Lynn*, while the Supreme Court in *Albright v. Oliver*, 510 U.S. 266 (1994), "declined to address the Fourth Amendment implications" of various pretrial restrictions in the course of analyzing a § 1983 malicious prosecution claim, four Justices agreed "that the imposition of restrictive conditions of release constitutes a seizure within the meaning of the Fourth Amendment." *Murphy*, 118 F.3d at 946 (citing *Albright*, 510 U.S. at 278–79 (Ginsburg, J., concurring); *id.* at 307 (Stevens, J., dissenting); *id.* at 290 (Souter, J., concurring)). Justice Ginsburg, concurring in *Albright*, offered the most detailed treatment of the issue, while also articulating the broadest conception of what constitutes a pretrial seizure:

> [A] defendant incarcerated until trial no doubt suffers greater burdens [than one released]. That difference, however, should not lead to the conclusion that a defendant released pretrial is not still "seized" in the constitutionally relevant sense. Such a defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed "seized" for trial, so long as he is bound to appear in court and answer the state's charges. He is equally bound to appear, and is hence "seized" for trial, when the state employs the less strong-arm means of a summons in lieu of arrest to secure his presence in court.

510 U.S. at 279 (Ginsburg, J., concurring). This approach has been much discussed in the case law cited above, but has only been embraced by the Second and Third Circuits.

Although later Supreme Court precedent indicates that certain restrictions are clearly pretrial seizures sufficient to give rise to a § 1983 malicious prosecution claim, those cases do

little to clarify the lower bounds of what constitutes a seizure. The Court recently held, for example, that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017). That holding supports the self-evident conclusion that detention constitutes a seizure for purposes of the Fourth Amendment, but it says nothing about whether lesser interferences with liberty will suffice. Similarly, the Court's earlier holding in *Wallace v. Kato* adds no further guidance. *See* 549 U.S. at 389–90 (describing the "tort of malicious prosecution" as "remed[ying] detention accompanied . . . by wrongful institution of legal process" (emphasis omitted)). Indeed, rather than holding "that a claim for malicious prosecution pursuant to § 1983 does not arise unless and until the claimant is unlawfully detained pursuant to the commencement of his/her prosecution" as Defendants argue, Dkt. 21 at 4–5, the *Wallace* decision expressly declined to reach the issue, stating that it had "never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983," and that it would "not do so here," 549 U.S. at 390 n.2. The Supreme Court, moreover, has elsewhere stated that "a successful malicious prosecution plaintiff may recover . . . compensation for any arrest *or* imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (emphasis added).

That Defendants' position lacks support in the case law does not, however, resolve the question of whether Spiller has adequately alleged that he was "seized" within the meaning of the Fourth Amendment after the instigation of legal proceedings against him. The complaint states that Spiller "was deprived of his liberty" on the date of his arrest and then "was arraigned and forced to come to Court on every court date regarding the . . . arrest prior to the case being dismissed on the merits." Dkt. 1 at 15 (Compl. ¶¶ 68–69). The Court is persuaded that only a

minimal restriction of the plaintiff's liberty is required to state a claim, but nonetheless concludes that the allegations in Spiller's complaint do not satisfy even that modest demand. Indeed, putting aside legal conclusions, he merely pleads, without any elaboration, that he was required to appear in court. In his opposition brief, however, Spiller adds that he was "released [following his arraignment] on personal recogniz[ance] with release conditions under the supervision of the Pretrial Services Agency." Dkt. 19 at 21–22. He describes those conditions as being "laborious and life[-]altering requirements." *Id.* at 22. The Court may consider only the sufficiency of the allegations within the complaint on a motion to dismiss for failure to state a claim, *see Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017), but in light of the additional detail Spiller's opposition brief indicates he may be able to supply, the Court will dismiss this claim without prejudice. The Court will further order that he file an amended complaint that adds all relevant allegations regarding the extent to which he was "seized" during the allegedly malicious prosecution.

      2.    *Common Law*

Defendants offer no substantial basis to dismiss Spiller's malicious prosecution claim under D.C. tort law.[4] Their motion to dismiss makes no attempt to address Spiller's common law claim, and their reply does so only cursorily. In their reply, they argue that "Spiller's underlying suit did not terminate favorably," an element of the common law claim in the District of Columbia. Dkt. 21 at 4. Courts considering this element must ask whether "the facts of the case indicate that [the] disposition reflects on the innocence of the defendant in the underlying

---

[4] D.C. tort law does not require a "seizure" to make out a malicious prosecution claim based on a prior criminal prosecution. *See District of Columbia v. Tulin*, 994 A.2d 788, 802 (D.C. 2010) (describing elements); *Bumphus v. Smith*, 189 A.2d 130, 131 (D.C. 1963) (same). The Court's analysis of Spiller's § 1983 claim does not, therefore, resolve whether he has stated a common law claim.

suit." *Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. 1986).  Here, Spiller has alleged that an investigation was opened into the officers responsible for his arrest, and he argues that the charges were dropped as a result of his actual innocence, rather than the sort of technical or procedural ground that might support Defendants' position.  Dkt. 19 at 22; *see Clark v. District of Columbia*, 241 F. Supp. 3d 24, 35 (D.D.C. 2017).  Given the conclusory nature of Defendants' argument and the requirement, on a motion to dismiss, that the Court draw reasonable inferences in Spiller's favor, the Court declines to dismiss Count VI to the extent it alleges a common law claim for malicious prosecution.

**C.      Negligent Infliction of Emotional Distress**

Count VIII alleges "that the grossly negligent misconduct by the Defendant Police Officers" and the general "misconduct" of the Defendants "directly and proximately caused Plaintiff Spiller to lose his sole source of employment, suffer serious physical injury including bodily injury, pain and suffering, shock, anxiety, sleeplessness, and extreme emotional distress, and humiliation."  Dkt. 1 at 16 (Compl. ¶¶ 75–76).  The complaint is unclear whether this count alleges a violation of § 1983 or the common law, and Defendants initially moved to dismiss as to both theories of liability for failure to state a claim.  In their reply, however, Defendants withdrew their motion to dismiss Plaintiffs' claim of common law negligent infliction of emotional distress, and now seek only to dismiss Plaintiffs' claim to the extent it is premised on § 1983.  Dkt. 21 at 5.  They argue, in particular, that Plaintiffs have failed to state a claim because "negligence causing a deprivation of property cannot give rise to a constitutional due process violation pursuant to §1983."  Dkt. 13 at 21; Dkt. 21 at 5.  This argument is a non sequitur; Plaintiffs do at times allege monetary loses stemming from a loss of employment, but the complaint makes clear that they are also alleging "shock, anxiety, sleeplessness, and extreme

emotional distress, and humiliation" resulting from a loss of liberty, rather than property. Dkt. 1 at 16 (Compl. ¶ 76).

Plaintiffs' opposition further complicates the matter by abandoning the § 1983 argument as it relates to the individual officers, and instead arguing that the negligence resulting in their emotional distress stemmed from MPD's maintenance of "a policy, practice, or custom" regarding arrests of innocent onlookers. Dkt. 19 at 24–25. Plaintiffs then repeat that their "unlawful arrest" resulted in "the application of unnecessary an[d] excessive force" directly attributable "to the training and supervision of the Defendant Officers." *Id.* at 25. Thus clarified, this claim is identical to the negligent supervision and training allegations contained in Counts IV and V. *Compare id.*, *with id.* at 16–19. Because these claims all allege that the District of Columbia's training, policies, and procedures led to the deprivation of Plaintiffs' civil rights in violation of § 1983, the Court will dismiss Count VIII—insofar as it seeks to advance a distinct claim under § 1983—on the same grounds discussed in the context of Counts IV and V below. To the extent Count VIII alleges a common law claim, however, Defendants do not seek dismissal, and thus that more limited claim stands.

## D.    Negligent Training and Supervision

Plaintiffs allege in Counts IV and V that the District of Columbia's negligent training and supervision of its police force led to Plaintiffs' injuries. They allege that the District of Columbia

> fail[ed] to maintain adequate policies, fail[ed] to adequately train, supervise, and
> control police officers concerning enforcement of District of Columbia laws[] [and]
> street encounters with individuals lawfully on the streets of the District of
> Columbia, fail[ed] to investigate and impose discipline on police officers who
> employ[ed] improper investigation methods, and fail[ed] to adopt other remedial
> measures and policies to ensure that such violations do not recur.

Dkt. 1 at 5 (Compl. ¶ 16). Briefly stated, Plaintiffs argue that the policies and procedures of the District were insufficient to prevent the behavior that led to Plaintiffs' injuries and that the District failed to adequately supervise the defendant police officers. *Id.* at 12–14. The complaint does not specify whether these claims are brought under the common law or § 1983. Defendants argue that any common law claim must be dismissed for failure to comply with the D.C. notice statute, and they further argue that Plaintiffs have failed to state a claim for negligent supervision and training, whether framed as arising under the common law or § 1983. The Court discusses these arguments in turn.

1. *Compliance with Statutory Notice Requirement*

Defendants first argue that Plaintiffs failed to provide the notice to the District required under D.C. law. Dkt. 13 at 13–15. The provision governing that notice, § 12-309 of the D.C. Code, states that:

> [A]n action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

D.C. Code § 12-309. This requirement serves two purposes. First, it "protect[s] the District of Columbia against unreasonable claims," and, second, it ensures "reasonable notice . . . so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Gaskins v. District of Columbia*, 579 A.2d 719, 721 (D.C. 1990) (quoting *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978)).

"[A]lthough strict compliance with § 12-309's requirement that timely notice be given to the District is mandatory, greater liberality is appropriate with respect to the content of the notice." *Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995). In the present

case, only notice of the "cause" and "circumstances" of Plaintiffs' injuries is disputed.  Notice is sufficient with respect to the "cause . . . of the injury or damage" when "it recites facts from which it could be reasonably anticipated that a claim against the District might arise." *Pitts*, 391 A.2d at 808–09.  As to the circumstances of an injury, the notice "must be detailed enough for the District to conduct a prompt, properly focused investigation of the claim." *Washington v. District of Columbia*, 429 A.2d 1362, 1366 (D.C. 1981).  Plaintiffs, however, are not required to identify "the precise legal theory upon which [they] seek[] relief," *Maldonado v. District of Columbia*, 924 F. Supp. 2d 323, 333 (D.D.C. 2013) (quoting *Shaw v. District of Columbia*, No. 05-1284, 2006 WL 1274765, at *7 (D.D.C. May 8, 2006)), and "courts generally 'resolve doubts in favor of finding compliance with the statute,'" *Maddux v. District of Columbia*, 144 F. Supp. 3d 131, 148 (D.D.C. 2015) (quoting *Wharton*, 666 A.2d at 1230).  Indeed, a potential litigant need not give any explicit notice of potential *theories* of liability—a police report that describes the "the approximate time, place, cause, and circumstances of the injury or damage" constitutes notice even though the police report, by its nature, will make no express mention of a potential cause of action against the District.  *Shaw*, 2006 WL 1274765, at *7 (quoting D.C. Code § 12-309); *accord Pitts*, 391 A.2d at 809.

Plaintiffs sent two notices in this case, neither of which stated that Spiller and McCray intended to bring suit for negligent supervision or training.  Instead, they alerted the District of Plaintiffs' "intention to file suit against the District of Columbia for [their] unlawful arrest[s] and for the intentional, unjustifiable, and brutal physical assault of [their] person[s] by [MPD] officers." Dkt. 19 at 29 (McCray Notice); *id.* at 31 (Spiller Notice).  To Defendants, these descriptions—along with further details about the injuries to the Plaintiffs, the dropped prosecutions, and the U.S. Attorney's Office investigation—are insufficient to meet both the

"cause" and "circumstance" requirements under § 12-309. Defendants argue that the notices "provide no factual basis or reason for the District to anticipate litigating any claim that the arresting officers were negligently supervised," and "there is nothing in [the notices] alerting the District that it should investigate the supervision of the MPD officers who arrested Plaintiffs." Dkt. 13 at 15.

Whether the notice provided by Plaintiffs suffices is a close question. Some decisions interpreting § 12-309 have held that police reports (which the statute permits in lieu of a formal notice) that do not expressly refer to training or supervision provided by the District still provide adequate notice with respect to negligent training or supervision claims.[5] For example, in *R. v. District of Columbia*, 370 F. Supp. 2d 267 (D.D.C. 2005), the court held that a police report describing attacks by one child on other attendees at a District-owned and -operated summer camp sufficed to give notice of a claim for negligent supervision. *Id.* at 272–74. The report contained "a description of [an] alleged assault," statements that the perpetrator might have assaulted others, and "a note that '[the perpetrator] is the oldest and he was in charge.'" *Id.* at 274. The District's general supervision of the camp and the fact that any authority exercised by the camper who injured the plaintiffs must have come from the District "suggest[ed] direct involvement by the District . . . from which the District could reasonably anticipate that tort claims against the District might arise." *Id.* The court declined to require notice of specific theories of the District's liability, instead focusing on whether the possibility of any claims against the District could be inferred from the notice. *Id.* at 272–74. Similarly, in *James v. District of Columbia*, 610 F. Supp. 1027 (D.D.C. 1985), the district court held that a report

---

[5] Whether a police report provides adequate notice is evaluated under the same standard as other forms of notice, such as the letters sent in this case. *See Washington*, 429 A.2d at 1367 n.17.

detailing the injuries suffered by an arrestee, "witnesses' statements regarding [a police officer's] conduct," "the police report of the arrest itself," and the results of a later internal misconduct investigation complied with § 12-309 because the notice thereby provided "fully apprised" the District "in ample time of all it needed to know to anticipate and prepare to defend against" claims for "negligent supervision, training and discipline of its police officers." *Id.* at 1031.

In *Rieser v. District of Columbia*, 563 F.2d 462 (D.C. Cir. 1977), the D.C. Circuit approved of a similar inference, holding that police reports that included "the time and place of [a] rape and murder," identifying information about the victim and suspect, and the fact that the suspect "was a District of Columbia parolee" working at the site of the crimes sufficed to give notice for a claim of negligent supervision against the District. *Id.* at 476–77. The District had argued that the police reports in question gave no indication of a potential negligence claim against the District because they did not reference any "failure to provide adequate parole supervision." *Id.* at 476. The D.C. Circuit disagreed, holding that the information in the reports "provided the District notice of the principal facts sufficient to lead it to those related facts which were peculiarly within its possession, and that the requirements of section 12-309 were satisfied." *Id.*

The notice letters sent by Plaintiffs sufficiently informed the District of the cause and circumstances of their injuries. Spiller and McCray stated that "[t]he actions of the officers" in the course "of their official duties" "resulted in substantial bodily harm" because they "use[d] excessive force when they accosted, unlawfully arrested, and brutally assaulted" Plaintiffs. Dkt. 13-1 at 2; *id.* at 4. They go on to "give[] notice that" they "intend[] to commence a lawsuit against" the District on the basis of these "actions taken against [Plaintiffs] by the MPD officers." Dkt. 19 at 31. From these "facts . . . it could be reasonably anticipated that a claim

against the District might arise." *Pitts*, 391 A.2d at 809. The potential for claims against the District itself was further suggested by the notices' reference to improper conduct by two police officers and the fact that "[t]he United States Attorney's Office has opened an investigation against *all* officers involved in this matter." Dkt. 13-1 at 4 (emphasis added); *id.* at 2.

Defendants offer no decision for the proposition that a court should parse the notice provided claim by claim to determine whether specific causes of action were mentioned, rather than determine generally whether the District was notified of a potential lawsuit. They cite to only a single district court case in which the court found that a plaintiff's reference to "negligence" sufficed to give notice of negligent supervision and training claims. Dkt. 21 at 2–3 (citing *Maldanado v. District of Columbia*, 924 F. Supp. 2d 323 (D.D.C. 2013)). But that such specificity was sufficient to provide notice says nothing about whether it was necessary. The cited case noted that "negligent supervision and negligent failure to train are both varieties of negligence that are reasonably likely to be alleged against the District arising out of [an] arrest by MPD officers," and acknowledged that while "the letter does not specifically list 'negligent training' or 'negligent supervision' as potential causes of action, such 'precise exactness is not absolutely essential.'" *Maldanado*, 924 F. Supp. 2d at 333 (quoting *Washington*, 429 A.2d at 1365). The cases discussed above demonstrate, moreover, that the approach the District advocates for would be inconsistent with the general methodology applied when evaluating the sufficiency of notice under § 12-309. *See, e.g.*, *Feirson v. District of Columbia*, 315 F. Supp. 2d 52, 56–57 (D.D.C. 2004) (analyzing notice with respect to common law claims as a group, rather than determining whether notice was sufficient as to each potential theory of liability). And to adopt the District's position regarding the specificity with which causes of actions must be

described "would effectively read the police report alternative out of the statute." *Pitts*, 391 A.2d at 810.

In sum:  A plaintiff's notice need not "assert[] a claim." *Washington*, 429 A.2d at 1366. What matters is that the notice "describe[] the *injuring event* with sufficient detail to reveal, in itself, a basis for the District's potential liability." *Id.* (emphasis added).  Courts, moreover, "generally 'resolve doubts in favor of finding compliance with the statute.'" *Maddux*, 144 F. Supp. 3d at 148 (quoting *Wharton*, 666 A.2d at 1230).  The requirements of § 12-309 "with respect to the *content* of the notice . . . are to be interpreted liberally." *Wharton*, 666 A.2d at 1230.  That is because "the purpose of § 12-309 is not to help the District to evaluate known claims by requiring notice complete enough to state a formal cause of action;" rather, it is "intended solely to assure the District the opportunity for timely access to all relevant facts about a potential claim, in order to protect the District against an unfair advantage by the eventual claimant." *Id.* at 1368 (holding that a letter from counsel stating that an injury occurred in a District-owned building sufficed to give notice of a negligence claim against the District). Although a close question, the Court concludes that Plaintiffs' notice does that by detailing Plaintiffs' injuries at the hands of two District employees, referring to an investigation that was launched as a result of those alleged misdeeds, stating that the notice was "not intended to be a complete recitation of all applicable law and/or facts," and "expressly reserv[ing] . . . [Plaintiffs'] right[s] to all available remedies against the District of Columbia." Dkt. 19 at 31.

The Court will, accordingly, deny Defendants' motion for summary judgment as to Plaintiffs' common law negligent training and supervision claims on notice grounds.

### 2.    *Failure to State a Claim*

Defendants next argue that Plaintiffs' claims of negligent supervision and training, whether framed as arising under § 1983 or the common law, should be dismissed for failure to

state a claim.  With respect to the common law tort claims,[6] Defendants assert that "Plaintiffs fail to allege any specific facts about the District's actual or constructive knowledge or that the District failed to adequately supervise Defendant Officers."  Dkt. 13 at 16.  As to the § 1983 claims, Defendants argue that "Plaintiffs have not identified any 'particular['] deficiencies as to the supervision of officers that could be said to have led to a violation of Plaintiffs' rights."  *Id.* at 17–18.

Plaintiffs do not, in substance, differentiate between their common law and § 1983 claims in responding to Defendants' arguments.[7]  Instead, they respond generally that they had sufficiently pled negligent supervision and training claims because their complaint contains allegations that "the proper training or supervision would have enabled the Officers to understand that a police officer cannot use excessive physical force against an individual when, as in this case, that individual has not committed any criminal offense;" that "the conduct of Defendants . . . will frequently result in the deprivation of the constitutional rights of

---

[6]  Although listed separately in the complaint, Count IV (Negligent Training) and Count V (Negligent Supervision) contain the same allegation of negligent failure to provide "proper training or supervision."  Dkt. 1 at 12–14 (Compl. ¶¶ 52–65).  Defendants treat the claims as a single cause of action under the common law and a single theory of § 1983 liability in their briefing, rather than distinguishing the factual or legal arguments underlying negligent "supervision" as opposed to "training."  Dkt. 13 at 15–18; Dkt. 21 at 2–4.  Plaintiffs purport to distinguish between the claims in their opposition, but again repeatedly refer to "training and supervision" rather than distinguishing the theories of liability.  Dkt. 19 at 16–20.  Courts in this district generally consider such claims as different flavors of the same tort.  *See, e.g.*, *Harvey v. Kasco*, 109 F. Supp. 3d 173, 179 (D.D.C. 2015); *Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 114–15 (D.D.C. 2011).  The Court, accordingly, analyzes the allegations together, but concludes that even if it were to address the adequacy of the pleadings with respect to training and supervision separately, Plaintiffs would still have failed to state a claim under either rubric.

[7]  Defendants argue that Plaintiffs have not addressed Defendants' arguments regarding the common law claims, and urge the Court to treat the claims as conceded.  Dkt. 21 at 3.  Because Plaintiffs have, in any event, failed adequately to plead either tort under the common law, the Court need not consider whether Plaintiffs' opposition concedes the point.

individuals;" that "the violations of the Plaintiffs' constitutional rights complained of were negligent and caused by customs, policies, and/or practices of authorized policymakers of Defendant District [of] Columbia;" that "supervisory officials of Defendant District of Columbia's Metropolitan Police Department . . . encouraged, authorized, directed, condoned, and/or ratified the unconstitutional and unlawful conduct complained of in [the] Complaint;" and that

> the District was deliberately indifferent, and condoned, and/or ratified and failed to properly train or supervise Defendant Officers in the use of force, enforcement of District of Columbia laws, street encounters with individuals lawfully on the streets of the District of Columbia, failing to investigate and impose discipline on police officers who employ improper police investigation methods, and failing to take remedial or disciplinary action against the Defendant Officers.

Dkt. 19 at 16–20; *see also* Dkt. 1 at 3–5 (Compl. ¶¶ 12–17); *id.* at 12–14 (Compl. ¶¶ 52–65).

The Court first considers whether Plaintiffs have adequately alleged common law claims for negligent supervision and training. In the District of Columbia, a party asserting a claim for negligent supervision or training must allege "that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise [or train] the employee." *Giles*, 487 A.2d at 613 (emphasis omitted); *see also Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 20 (D.D.C. 2015); *Brown v. Argenbright Sec. Inc.*, 782 A.2d 752, 759–60 (D.C. 2001). Plaintiffs do not allege that the District of Columbia had "actual or constructive knowledge" of any problematic behavior on the part of the officers in question *before* the incident at issue here. The bulk of the complaint instead consists of conclusory statements that the District failed properly to supervise and to train the officers at issue without reference to *any* of the necessary legal elements. *See, e.g.*, Dkt. 1 at 13 (Compl. ¶ 59) ("[T]he District of Columbia was deliberately and negligently indifferent, and failed to properly train or supervise

the Defendant Police Officers . . . .").  Construing the complaint to state a claim for negligent supervision or training requires inferring that the District knew or should have known about "dangerous or otherwise incompetent" behavior prior to Plaintiffs' arrests from two allegations: (1) the alleged failure of "the supervisors of the MPD" to "sanction or condemn the actions of the officers" who arrested Spiller and McCray, and (2) the alleged failure of the supervisors to "reverse the decisions"—presumably to arrest the men—"made in either Plaintiff's case." *Id.* at 13–14 (Compl. ¶ 59).

Even at the motion to dismiss stage that asks too much.  Plaintiffs' bare allegations of failures to supervise or train *after* the incident in question do not give rise to a reasonable inference that District or MPD officials were on constructive notice of dangerous or incompetent behavior by the officers in question *prior* to when Spiller and McCray were arrested.  Plaintiffs have not alleged that these officers were previously involved in similar incidents, or that other aspects of their behavior known to their supervisors would have or should have put their superiors on notice that the officers required additional supervision or training.  Plaintiffs, moreover, have not alleged any facts that might plausibly show that the District, as a matter of course, failed to discipline or to retrain officers after serious incidents, or that incidents of the type at issue here occurred with such regularity that the District was on notice of some common propensity among MPD officers.  The repeated recitation that "proper training or supervision would have enabled Defendant Police Officers" to avoid committing the actions giving rise to this suit does not suffice to plead a negligent supervision or training claim.  *See Harvey v. Kasco*, 109 F. Supp. 3d 173, 179 (D.D.C. 2015) (holding that similar allegations were insufficient to state negligent training or supervision claim); *Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 114–15 (D.D.C. 2011) (holding at summary judgment stage that negligent training and

supervision claim requires proof of "behavior before" the incident giving rise to an injury). Such exhortations are precisely the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that "do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

That leaves Plaintiffs' § 1983 negligent training and supervision claim. Because the District of Columbia is a municipality for purposes of the statute, it "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Stating a claim under § 1983 against the District requires the plaintiff to "allege not only a violation of [his or her] rights under the Constitution or federal law, but also that the municipality's custom or policy caused the violation." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004). That means alleging with at least some modicum of specificity an "affirmative link, such that a municipal policy was the moving force behind the constitutional violation." *Xingru Lin v. District of Columbia*, 268 F. Supp. 3d 91, 100 (D.D.C. 2017) (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).

Plaintiffs have failed to allege such a link. The complaint contains only conclusory references to the District's failure to train and supervise officers adequately, without any attempt to specify a causal connection between any policy or custom and the complained of behavior. *See* Dkt. 1 at 13–14 (Compl. ¶¶ 52–65). Such "conclusory allegations . . . that the actions and conduct of the defendant officers and . . . MPD are the result of a policy, practice, custom and deliberate indifference on the part of Defendant[s] . . . are not sufficient." *Xingru Lin*, 268 F. Supp. 3d at 100; *see also id.* (collecting cases in which similar complaints were dismissed for failure to state a claim); *accord Iqbal*, 556 U.S. at 678. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—

can a city be liable for such a failure under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Plaintiffs have not alleged such a choice, instead offering only the conclusory refrain that some undefined failure precipitated the officer actions at issue. As presently pled, this case more closely resembles the sort of "encounter[] [with] several poorly trained officers" that, without more, does not state a claim for municipal liability under § 1983. *See Xingru Lin*, 268 F. Supp. 3d at 101.

The precedent Plaintiffs cite does not support a different conclusion. *Amons v. District of Columbia*, 231 F. Supp. 2d 109 (D.D.C. 2002), and *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996), were decided prior to the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*. Before *Twombly* and *Iqbal*, a complaint would "not be dismissed for failure to state a claim unless it appear[ed] beyond doubt that the plaintiff c[ould] prove no set of facts in support of his claim which would entitle him to relief." *Atchinson*, 73 F.3d at 422 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Since *Twombly* and *Iqbal* were decided, however, the standard for evaluating a motion to dismiss for failure to state a claim has shifted significantly. Now, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Rather than the "no set of facts" standard in place at the time *Atchinson* was decided, today plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*, which requires "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.[8]

_____

[8] Even setting aside the intervening decisions, *Atchinson* involved an unusual police shooting, which the court characterized as "misconduct sufficiently serious and obvious to justify an

The Court, accordingly, will grant Defendants' motion to dismiss Plaintiffs' negligent supervision and training claims brought under § 1983.

## CONCLUSION

For these reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Defendants' motion to dismiss, or in the alternative, for summary judgment. It is hereby **ORDERED** that Counts I and II are **MERGED**. It is further **ORDERED** that Counts III, IV, and V are **DISMISSED**. It is further **ORDERED** that Counts VI and VIII, to the extent they allege claims under § 1983, are **DISMISSED.**

  **SO ORDERED**.


        /s/ Randolph D. Moss
        RANDOLPH D. MOSS
        United States District Judge


Date: March 23, 2018

---

allegation of improper training in the use of force." 73 F.3d at 422 (emphasis omitted). Plaintiffs allege misbehavior that, while serious, is significantly less egregious than the police actions in *Atchinson*.