**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| PERRY SPILLER, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>*Defendants.* |

Civil Action No. 16-2059 (RDM)

## MEMORANDUM OPINION AND ORDER

The matter is before the Court on the District of Columbia's motion for partial dismissal of Plaintiffs' amended complaint.[1] Dkt. 30. Plaintiffs Perry Spiller and James McCray are suing the District and two officers of the Metropolitan Police Department ("MPD") for various constitutional and common law torts stemming from an encounter in which the officers allegedly used excessive force. Spiller and McCray allege that they were unlawfully arrested, injured, and detained, and that Spiller was maliciously prosecuted. Previously, the Court dismissed without prejudice various counts of Plaintiffs' complaint. *Spiller v. District of Columbia*, 302 F. Supp. 3d 240 (D.D.C. 2018) ("*Spiller I*"), and Plaintiffs filed an amended complaint, Dkt. 29 (Amd. Compl.). Defendants now move to dismiss two counts of Plaintiffs' amended complaint: negligent supervision (count IV) and abuse of process (count VI). For the reasons explained below, the Court will **GRANT** the District's partial motion to dismiss.

---

[1] Although another defendant, Officer Robert Barillaro, originally joined in the pending motion, counsel subsequently withdrew the one argument in the motion that pertained to Officer Barillaro. Dkt. 34 at 3. The third defendant, Officer Sean Murphy, did not join in the motion.

## I. BACKGROUND

Plaintiffs' factual allegations, which the Court must accept as true for purposes of the present motion, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), are set forth in the Court's prior opinion, *see Spiller I*, 302 F. Supp. 3d at 243–44. To summarize, on May 30, 2015, two individuals unassociated with this case engaged in a loud—and eventually violent—argument outside of a nightclub as it closed for the night. Dkt. 29 at 5 (Amd. Compl. ¶ 19). Spiller and McCray maintain that they did not participate in the argument but, rather, "stood nearby and laughed at the incident." *Id.* at 5–6 (Amd. Compl. ¶ 20). Officers Robert Barillaro and Sean Murphy asked Spiller and McCray "to leave the scene where the fight took place." *Id.* Spiller and McCray, in turn, walked a short distance away "and sat on chairs in an alleyway adjacent to the street where the incident took place." *Id.* at 6 (Amd. Compl. ¶ 21). "Defendant Barillaro then re-approached the Plaintiffs and" informed them that he was placing them under arise for a "noise violation." *Id.*

Plaintiffs maintain that they "were not making loud noises." *Id.* (Amd. Compl. ¶ 20). They further allege that, after a brief verbal exchange, Officer Barillaro "tackled" Spiller by "using his hands and arms to negligently and forcefully conduct a reckless takedown." *Id.* (Amd. Compl. ¶ 22). Officer Murphy allegedly followed suit by tackling McCray. *Id.* Plaintiffs allege that the encounter resulted in "McCray suffer[ing] a fracture to his wrist and a dislocated finger" and "Spiller suffer[ing] swelling and abrasions to his legs, [a] sore throat, and . . . numbness on the left side of his body." *Id.* at 7 (Amd. Compl. ¶¶ 24–25). Plaintiffs also allege that, "as a result of the officers' . . . conduct," they lost their jobs. *Id.* at 7–8 (Amd. Compl. ¶¶ 26–27).

Although both Plaintiffs were arrested for "Making Noise at Night," the District declined to prosecute the offense. *Id.* The U.S. Attorney's Office, however, charged Spiller with Assault

on a Police Officer and Carrying a Dangerous Weapon because, according to the officers, Spiller used "nunchucks" during the encounter. *Id.* at 8 (Amd. Compl. ¶ 27). Spiller pled not guilty and continues to maintain that "he did not display the nunchucks or use [them] against any officer." *Id.* The U.S. Attorney's Office dropped the charges against Spiller "on the eve of trial." *Id.*

On October 14, 2016, Plaintiffs filed suit, asserting eight counts: false arrest, false imprisonment, violation of substantive due process, negligent training, negligent supervision, violation of the Fourth Amendment for malicious prosecution, gross negligent excessive force, and negligent infliction of emotional distress. Dkt. 1 at 9–16 (Compl. ¶¶ 32–76). In its prior opinion, the Court merged the false arrest and false imprisonment claims; dismissed the substantive due process, negligent training, and negligent supervision claims without prejudice; and dismissed the malicious prosecution and negligent infliction of emotional distress claims to the extent they were premised on 42 U.S.C. § 1983. *Spiller I*, 302 F. Supp. 3d at 257. Plaintiffs then filed an amended complaint on May 30, 2018, re-alleging their claims for false arrest (count I), malicious prosecution (counts II and III), negligent supervision (count IV), gross negligent excessive force (count V), and negligent infliction of emotional distress (count VII). *See* Dkt. 29 at 9–14 (Amd. Compl. ¶¶ 32–66). They also added a claim for abuse of process (count VI). *Id.* at 13 (Amd. Compl. ¶¶ 59–62). The District now moves to dismiss Plaintiffs' negligent supervision and abuse of process clams pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 30.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must "grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted). But the Court should not assume that "a legal conclusion couched as a factual allegation" is correct. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

The District moves to dismiss two counts of the amended complaint: Plaintiffs' negligent supervision and abuse of process claims. The Court will address each in turn.

### A. Negligent Supervision

Under D.C. law, a party asserting a claim for negligent supervision must establish that "[the] employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner" and that, "armed with that actual or constructive knowledge," the employer nevertheless "failed to adequately supervise the employee." *District of Columbia v. Tulin*, 994 A.2d 788, 794 (D.C. 2010); *see also Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 20–21 (D.D.C. 2015) (applying D.C. law). Previously, the Court held that Plaintiffs' original complaint failed to state a claim for negligent supervision because their "bare allegations" did not support a reasonable inference that the "District or MPD officials were on constructive notice of dangerous or incompetent behavior by the officers in question *prior* to when Spiller and McCray were

4

arrested." *Spiller I*, 302 F. Supp. 3d at 255. In an effort to cure this defect, Plaintiffs added the

following allegations to the amended complaint:

> Before this incident, the District of Columbia knew or should have known, apparent from the opening of [an] internal investigation of these Defendant Officers, that Defendant [Officers] engaged in a dangerous and incompetent manner of arresting and charging individuals without probable cause and assaulting arrestees.
>
> The District of Columbia[,] armed with this actual or constructive knowledge failed to supervise Defendant Officers[,] failed to reverse their decisions, and failed to condemn the officers.

Dkt. 29 at 12 (Amd. Compl. ¶¶ 53–54).

Those allegations still fail to support a plausible inference that the MPD had constructive

knowledge of the officers' conduct or incompetence *prior* to the incident at issue.

Notwithstanding the Court's prior decision highlighting that Plaintiffs had failed to allege the

District was on notice of "any problematic behavior . . . *before* the incident at issue" took place,

*Spiller I*, 302 F. Supp. 3d at 255, Plaintiffs offer only the conclusory allegation that the District

"knew or should have known" that the officers posed a danger to the public "[b]efore [the]

incident." Dkt. 29 at 12 (Amd. Compl. ¶ 53). Such "threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*,

556 U.S. at 678.

The only relevant *factual* allegation that Plaintiffs have added, moreover, does nothing to

cure this defect: Plaintiffs allege that the officers' need for greater supervision was "apparent

from the opening of [an] internal investigation" regarding their conduct. Dkt. 29 at 12 (Amd.

Compl. ¶ 54). They do not allege, however, that any such investigation was opened—or even

contemplated—before the incident at issue here. *See id.* (Amd. Compl. ¶ 53). To the contrary,

Plaintiffs allege that, "[u]pon dismissal of the charges [against Spiller] on the eve of trial, the

assigned prosecuting attorney informed [Plaintiffs' counsel] that the United States Attorney's Office had opened an internal investigation against Officers Murphy and Barillaro." *Id.* at 8 (Amd. Compl. ¶ 27); *see also* Dkt. 34-1 at 2. That allegation says nothing about whether the investigation was opened before then, and does not support a claim that the District had actual or constructive knowledge of the officers' danger or incompetence at the relevant time.

Plaintiffs rely on *Spicer v. District of Columbia*, 916 F. Supp. 2d 1 (D.D.C. 2013), to support their contention that they have alleged enough to survive a motion to dismiss, but that decision is inapposite. In *Spicer*, the Court concluded that an inmate's negligent supervision claim "barely" survived a motion to dismiss based on his allegation that the supervising corrections officer "was negligent in failing to adequately supervise the [corrections officers]" who attacked him and that, "due to the lack of adequate supervision," the corrections officers "broke his foot." *Id.* at 3–4. (citations omitted). Unlike in this case, however, the plaintiff in *Spicer* alleged three facts giving rise to a plausible inference of constructive notice: (1) the supervising corrections officer was "the correctional officers' employer for purposes of the negligence supervision claim;" (2) the supervising officer had legal a duty to "ensure that [his] subordinates provided an appropriate standard of care to inmates;" and (3) the corrections officers who attacked the plaintiff were, in fact, under the control of the supervising officer at the time of the incident. *Id.* at 3 (internal quotation marks and citations omitted).

Finally, Plaintiffs also allege that the District "failed to reverse" Officer Murphy's and Officer Barillaro's "decisions" and "failed to condemn the officers." Dkt. 29 at 12 (Amd. Compl. ¶ 54). Those allegations, however, do not relate to the District's supervision of the officers' conduct in the performance of their duties; rather, they relate to actions that the District might have taken after the officers engaged in the conduct at issue. The District's failure "to

reverse" the officers' decision to arrest Plaintiffs might bear on Plaintiffs' false arrest and malicious prosecution claims, but it does not support a claim for negligent supervision.

The Court will, accordingly, grant the District's motion to dismiss Plaintiffs' common law negligent supervision claim (count IV).

**B.  Abuse of Process**

Plaintiffs also allege, based on a theory of respondeat superior, that the District committed an abuse of process by arresting and charging Plaintiffs without probable cause. *See* Dkt. 29 at 13 (Amd. Compl ¶ 60). That claim also fails as a matter of law.

To state a claim for abuse of process under D.C. law, a plaintiff must allege: "(1) the existence of an ulterior motive; and (2) an *act* in the use of process other than such as would be proper in the regular prosecution of the charge." *Thorp v. District of Columbia*, 319 F. Supp. 3d 1, 22 (D.D.C. 2018) (quoting *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959)). An ulterior motive or "[un]pure heart," accordingly, is not enough, *Nadler v. Democratic Nat'l Comm.*, 567 F.3d 692, 698 (D.C. Cir. 2009); the tort also requires "a 'perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge,'" *Scott v. District of Columbia*, 101 F.3d 748, 756 (D.C. Cir. 1996) (quoting *Bown v. Hamilton*, 601 A.2d 1074, 1080 (D.C. 1992)). That "perversion of the judicial process," moreover, must be actually achieved. *Rockwell Capital Partners, Inc. v. CD Int'l Enters., Inc.*, 311 F. Supp. 3d 52, 56 (D.D.C. 2018) (noting that a plaintiff "must demonstrate . . . success in achieving illegitimate ends with resulting injury" (quoting *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 137-38 (D.C. Cir. 1989))); *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1982) ("[I]n addition to ulterior motive,

one must allege . . . that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge.").

Plaintiffs' first allegation—that the officers committed an abuse of process by effecting an arrest "with the ulterior motive of covering up their assault," Dkt. 29 at 13 (Amd. Compl. ¶ 61)—cannot state a claim for relief for two reasons. First, by Plaintiffs' own account, their arrest *preceded* the assault. *See id.* at 6–7 (Amd. Compl. ¶¶ 21–23). They allege, for example, that Officer Barillaro approached them and stated, "You're under arrest for noise violation," *id.* at 6 (Amd. Compl. ¶ 21); that they then "questioned the officers about [their] allegations," *id.* (Amd. Compl. ¶ 22); that they "attempted to explain that the noise came from the individuals [involved in the fight]," *id.*; and that, only after these events, did the officers assault them, *id.* at 6–7 (Amd. Compl. ¶¶ 23–24). Second, "warrantless arrests and detentions effectuated entirely *independent* of the judicial process [do] not support an abuse of process tort." *McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984); *see also Thorp*, 319 F. Supp. 3d at 22 (quoting same). The rationale for that rule is self-evident: The abuse of process tort covers the improper use "of the judicial machinery," *Thorp*, 319 F. Supp. 3d at 33 (quoting *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 104 n.4 (Cal. 1972)), and a warrantless arrest does not involve the judicial process. *See Bown*, 601 A.2d at 1079 (noting that the abuse of process "tort lies where the legal system has been used to accomplish some end which is without the regular purview of the process" (internal citation and quotation marks omitted)); *Abuse of Process*, Black's Law Dictionary (10th ed. 2014) (defining term as "[t]he improper and tortious use of a legitimately issued court process").

Plaintiffs' second claim—that the officers instituted criminal charges to cover up their alleged assault, Dkt. 29 at 13 (Amd. Compl. ¶¶ 60–61)—is foreclosed by the D.C. Circuit's

decision in *Scott*, 101 F.3d 748.  There, the plaintiff alleged that "the officers committed an abuse of process by instituting criminal proceedings against him for DUI with the ulterior aim of covering up their use of excessive force."  *Id.* at 755.  The plaintiff prevailed at trial, and the district court declined to grant the District's motion for judgment as a matter of law or, in the alternative, for a new trial.  *Id*. at 752.  On appeal, however, the District prevailed "[b]ecause [the plaintiff's] theory, as well as the evidence before the jury, fail[ed] to state a claim for abuse of process."  *Id*. at 755.  As the D.C. Circuit explained, "[t]he fact that the officers expected to realize some benefit by covering up their own alleged wrongdoing simply points to an ulterior motive, not the kind of perversion of the judicial process that gives rise to a cause of action for abuse of process."  *Id.* at 756.  Rather, a perversion of the judicial process requires some "collateral purpose," such as "pressur[ing] [the defendant] into taking [an] action or prevent[ing] him from taking [an] action," or "stifl[ing] competition by dissuading third parties from investing in the [defendant's] business venture."  *Id.*

Plaintiffs contend that *Scott* is inapposite because the officers' motive to cover up the assault in this case was the "precise purpose" for instituting charges, not an ulterior motive.  Dkt. 33 at 5.  In other words, Plaintiffs argue that, unlike in *Scott*, the charges that Officers Barillaro and Murphy initiated were not filed for the purpose of "establishing that [Plaintiffs were] guilty of a criminal offense."  *Scott*, 101 F.3d at 756.  That contention, however, conflates the "two essential elements" of the tort.  *Thorp*, 319 F. Supp. 3d at 22.  As *Scott* makes clear, a desire to cover up an officer's use of excessive force is not enough—nor, more generally, is a bad purpose sufficient to state a claim for abuse of process.  Rather, the plaintiff must also allege that the judicial process was used "to accomplish some end which is without the regular purview of the process" or to "compel[] the party against whom it is used to do some collateral thing which he

9

could not legally and regularly be required to do." *Scott*, 101 F.3d at 755 (quoting *Bown*, 601 A.2d at 1079).

In their complaint, Plaintiffs allege only that the officers had "the ulterior motive of covering up their assault." Dkt 29 at 13 (Amd. Compl. ¶ 61). Like the plaintiff in *Scott*, however, they fail to identify any "collateral purpose"—that is, some end outside of "the regular purview of process" that the officers had for pressing charges. Plaintiffs do not, for example, allege that the process was used to compel them to take some action that that they "could not legally . . . be required to" take. *Scott*, 101 F.3d at 755. Nor do they claim that the officers filed charges "in order to intimidate [them] into declining to file civil charges." *See Westfahl v. District of Columbia*, 75 F. Supp. 3d 365, 375 (D.D.C. 2014); *see also Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 119 (D.D.C. 2012). Without any allegation of improper coercion or some other "collateral purpose," Plaintiffs' abuse of process claim is controlled by *Scott* and, as a result, cannot stand.

The Court will, accordingly, grant the District's motion to dismiss Plaintiffs' common law abuse of process claim.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the District's motion to dismiss counts IV and VI of Plaintiffs' amended complaint.

 /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: February 19, 2019